Dickson, J.
The plaintiff complained that the defendants were about “to cremate and consign to ashes the body of Frank B. Evans, recently deceased; that she and her family believe that the cremation of a body is contrary to religion and the will of God, and that unless restrained, the defendant will cause her to suffer irreparable injury; that cremation is not Christian burial and that she will suffer great distress of mind and -anguish of spirit if the body of her brother were cremated and that she would lose her interest in her brother’s body,’’ and she asks for an injunction temporary, then final.
During the trial Nettie E. Bruce, a sister, testified:
*620 “By Mr. Black—
“Q. State to the court, what is your name? A. Nettie E. Bruce, of Marion, Ohio.
‘ ‘ Q.. What relation are you to Frank B. Evans ? A. A sister.
“Q. What relatives did Mr. Evans leave? A. What relatives did he leave? He left a sister, Mrs. Frank Mulvy, Miss Lizzie Evans and myself, and a Mrs. Clark of New York.
“Q. What attitude have you toward disposing of the body by cremation? A. I am very much opposed to cremation, not exactly on religious grounds, but it is the way our family feels on the subject."
Then Mrs. Annie T. Evans, the widow, stated to the court: *625 The plaintiff in this case is a corporation engaged in the live stock commission business at Buffalo, N. Y., and during the past year, in the course of its business, many car loads of cattle, sheep and hogs have been shipped to it at Buffalo from Ohio and states west of Ohio, by way of Cleveland. In accordance with the provisions of the so-called federal twenty-eight hour law, which requires that interstate shipments of live stock be unloaded for feed and rest every twenty-eight hours, unless such time,' under special circumstances, be extended, many of the car load lots of such live stock were unloaded at Cleveland for that purpose.
*620 “My husband is to be cremated. It was his wish years ago, and on account of the way his father’s body was buried and the bones taken up, he had a horror of being buried in the ground and having his bones-scattered afterwards. Two years ago he said he wanted to be cremated.
“By Mr. Robert A. Black—
“Q. After the body is cremated, what do you expect to do with it? A. I will take care of the ashes in my home, as he requested me to do.
“ Q. It was not your purpose to dispose of them in any cemetery ? A. No, I intend to take care of them in my home as long as I live.
“By the Court—
“Q. Mrs. Evans, you have heard what these sisters say? A. Yes, sir.
“Q. Have you any objection to having him buried in the ground at their joint request? A. Yes, sir. I am carrying out his wishes. He had a horror of being put in the ground on account of the way his father’s bones were taken up.
“Q. You are not willing to join with the sisters? A. No; I am going to carry out his wishes.
“Q., What are your wishes in the matter? A. Why, I want to have him put into a retort and cremated. I think it is the only sanitary thing to do and he felt in that way about it. ’ ’
“What, Mr. Black, would you suggest should best be done under all the circumstances ?
‘ ‘ I think that this body should be disposed of in such a manner that his relatives — his brother and sisters — may come to his *621 grave. As Your Honor has seen, they are people advanced in life, that there is not much left to them except the memory of their dead, and if seems to me that they ought to be given that privilege.
“What is your opinion as a lawyer, Mr. Black, as to what is just and right — not a sentimental opinion, but as a lawyer ?
"I believe that the court should have this body interred. The question of cremation has only been passed upon once and that is in an English report. You are asking purely as to law. The question of the direction of the decedent has been passed upon just once, and there the decedent left instructions for his body to be cremated. It was a case decided by the Lord Chancellor of England in 1896.
“What did he decide?
“The body was taken by force and cremated and the person doing it, and who was instructed by his last will to do that, brought suit to recover the expenses, and the court refused to allow him the expenses.' The only case in Ohio is the one of Herold v. Herold, 3 N.P.(N.S.), 405. In that case the decedent requested that his body be interred at a place a very great distance from where he died. It was objected to by the widow and supported by the rest of the family. The court refused to carry out the request.
“What was the reason given for that decision?
“Because it was unreasonable under all the circumstances. The question of expense entered into that case.
“What do you mean by unreasonable?
“I mean that a body is not property, and it has been repeatedly held not to be property. There is an interest that may be had in it arising out of family ties. The widow is not the sole person having that interest. She can not keep out the rest of the family from their rights.
“Can they exclude her?
“No, they can not. It is the purpose of this widow to reduce that body to ashes and keep those ashes in the house. Now that in itself is startling.
“Has the court anything to'do with what is startling?
“Other courts have had, Your Honor.
“We have no right to interfere with any one’s conscience or religion. The body must be disposed of. If no one interested in kinship will do it, the public must. The public would have a right under some circumstances to give it to a hospital for dissection. Now, whose duty is it to dispose of this body, Mr. Black?
*622 “Your Honor can make the widow dispose of it.
“Then has not the widow the right to dispose of it?
“Yes.
“Would she not have a right to dispose of it according to her religious or sentimental feelings?
“She has not an absolute right.
“Has she not a right to dispose of that body as she pleases since it is her duty?
“Would Your Honor say that she had a right to give this body to a hospital?
“That question is not before the court. It is the duty of the widow to dispose of the body on sanitary grounds. Since the law provides it is the duty of the widow as heir or next of kin to dispose of the body, Avhat right have I in this case to interfere? Would she not have a right to dispose of it as she pleases under the seventh section of the Bill of Rights—
“ ‘No person shall be compelled to attend, erect or support any place of worship, or maintain any form of worship, against his consent; and no preference shall be given by law to any religious society; nor shall any interference with the rights of conscience be permitted.’
“How can I interfere with her right of conscience, unless that conscience should be of such kind and nature as to be against the law or public policy or the Constitution?
“ ‘No religious test shall be required, as a qualification for office, nor shall any person be incompetent to be a witness on account of his religious belief. Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the General Assembly to pass suitable laws to protect every religious denomination in the peaceful enjojunent of its own mode of public Avorship, and to encourage schools and the means of instruction.’
“Mr. Black: I am claiming that it Avill outrage the sensibilities of these sisters to have this body cremated.
“The Court: That is wby I asked the widow if it would be possible for her to join in some agreement with the sisters. I had hoped, this being a matter solely of conscience, that we could get these good people together on the conscience matter and put this body on a lot, and so have the controversy ended. But since I am a judge and must decide according to the law, and since this body belongs to the widoAv for disposition and since it is her wish that it shall be burned, how can I interfere ?
“Your Honor in passing upon the disposition of this body is going farther than any court heretofore to give the body either *623 to the wife or sisters. You are going to shock the sisters in allowing this body to be cremated.
“The Court: Suppose you follow that out, Mr. Black. I have to shock the conscience of either Miss Evans and her sisters, or Mrs. Evans, the widow — the conscience of some one is bound to be shocked.
“Mr. Black: I do not recall that she said that she did make this a matter of conscience. She was in favor of cremation because it was sanitary and she had protested against burial in the ground.
• “The Court: And Mr. Evans had requested it beforehand, and she regards it from her standpoint as the proper disposition of dead people.
“Mr. Black: We not only asked for an injunction, but we ask for such further rights as we may be entitled to in law and equity. My clients have been absolutely excluded from paying tribute of affection to the remains of their brother. It was this widow’s purpose to have quickly taken this body and consumed it to ashes and then kept the ashes about the house. I feel that the court — there is no question but that the court can, and I feel that the court ought to require that the interment of this body be so deep that the conditions that the widow complains of as to the future would not happen. It ought to be on the conscience of this court to require the interment of this body, but make the condition that it would be interred in such a way that no occasion of having the bones exposed, as Mrs. Evans testified to on the stand, would arise. How can this court in any decency or justice allow this widow' to cremate this body and keep the ashes around the house like a piece of bric-a-brac. I think that would be carrying the proposition down to the point of ridicule.
“The Court: How can I interfere with the morality or the right of conscience of any one so long as the law is not broken? The widow is required to dispose of the body, therefore she has some ownership in it-a duty to perform. She may dispose of it in any way she sees fit, so long as she does not violate the law. Suppose the wife desired interment in the ground and the sister desired cremation, what would you say should be done in that case?
“Mr. Black: I would say that Your Honor could not order cremation. It is unusual — because cremation is extraordinary —it is a freak.
‘ ‘ The Court: Why do you call it unusual, Mr.' Black ? In other days it was the only method of disposing of the dead.
*624 “Mr. Black: There was a ease — a famous ease — a leading case in America, upon what are property rights, In Be Buggies, 4 Bradford Surrogate, New York, 503, and I fail to find a case reported where a question of the dead arose, in which that case was not cited as a leading authority as the development of the attitude of the law on that subject. I want to read from that case:
“ ‘The right to the repose of the grave necessarily implies the right to its exclusive possession. The doctrine of the legal right to open a grave in a cemetery after a certain lapse of time, to receive another tenant, however it may be sanctioned by custom in the English church yards or by Continental usage at Pere-LaChaise, and elsewhere, will hardly become acceptable to the American mind; still less the Italian practice of hastening the decomposition of the dead by corrosive elements.
“ ‘The right to the individuality of a grave,-if it exists at all, evidently must continue so long as the remains of the occupant can be identified — and the means of identifying can only be secured and preserved by separate burial. The due and decent preservation of human remains by separate burial, is pre-eminently due to Christian civilization, which bringing in the coffin and the sarcophagus, superceded the custom of burning, and “gave” in Lord Stowell’s vivid phrase, “final extinction to the sepulchral fires.” ’
“That was written by a man who was esteemed as considerable of a scholar in America.
“The Court: I will have to hold, Mr. Black, that the body primarily belongs to the government. No body can be disposed of by any one without a permit from the proper authority. After the public is through with the body, where does it go? It goes, as far as right is concerned, to the person whose duty it is to dispose of it. The widow here is the heir of the decedent. To prevent the authorities from taking it, the widow must dispose of it. If she see fit to take that method of burial which suits her and does not enter into conflict with the laws of Ohio, she has a right to exercise her wish according'to her own conscience —her own religious or moral beliefs. It is unfortunate that these sisters’ feelings and consciences will be shocked by disposing of the body by cremation, but since it is not illegal and the law does not prevent it, this court can not interfere.
“The court will order that an opportunity be given before incineration for the next of bin to see the body.”